FILED

SEP 12 2024

CLERK, U.S. DISTRICT
WESTERN DISTRICT OF TEXAS
BY _____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARK ANTHONY ORTEGA<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN-AMICABLE LIFE<br>INSURANCE COMPANY OF TEXAS<br>Defendant. | Case No. **SA24CA1038 FB**<br><br>PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT AND TEXAS BUSINESS AND COMMERCIAL CODE<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF THE CASE

1. This action seeks to stop Defendant American-Amicable Life Insurance Company of Texas ("Defendant" or "ALICO") from engaging in a persistent and illegal telemarketing campaign that bombards Plaintiff Mark Anthony Ortega ("Plaintiff" or "Ortega") with unwanted robocalls, often exceeding fifteen calls per day. Despite Plaintiff's repeated attempts to stop these calls, Defendant continues its harassment in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Texas Business and Commercial Code, Chapter 302 ("Tex. Bus. & Com. Code"). Defendant's calculated scheme uses illegally spoofed numbers and a fictitious name to conceal its true identity and deceptively market its insurance products, causing Plaintiff substantial harm in the form of invasion of privacy, frustration, anxiety, wasted time, and interference with his daily life.

## BACKGROUND ON THE TCPA

2. Enacted in 1991 with bipartisan support, the TCPA aims to protect consumers from the nuisance and invasion of privacy caused by unsolicited telemarketing calls, reflecting

Congress's recognition of such calls as a "scourge of modern civilization." See 137 Cong. Rec. 30821 (1991).

3.  Decades later, the TCPA remains a crucial safeguard against the ever-increasing volume of unwanted calls, which consistently rank among the top consumer complaints. *See Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015*)*. The TCPA remains a vital tool for combating these abuses, and its private right of action is essential to empower individuals to hold violators accountable.

4.  The TCPA specifically prohibits the use of automated telephone dialing systems or pre-recorded voice messages to make telemarketing calls to cellular telephones without the prior express consent of the called party. Additionally, the TCPA strictly forbids telemarketing calls to numbers listed on the National Do Not Call Registry. These provisions are designed to protect consumers from the unique harms associated with these types of intrusive calls, including wasted time, invasion of privacy, and the potential for economic loss.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012)* (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA). As this action involves alleged violations of the TCPA, a federal question is presented, thus conferring jurisdiction upon this Court.

6.  Additionally, this Court has supplemental jurisdiction over the claims arising under Tex. Bus. & Com. Code § 302. While the Texas Business and Commercial Code, Chapter 302, is a state law, it complements and supplements the federal TCPA by providing additional protections

2

to Texas residents against unwanted telemarketing calls. Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy.

7. In this instance, the claims under the Tex. Bus. & Com. Code § 302, are intertwined with the TCPA claims, as they both arise from the same set of facts involving the Defendant's alleged telemarketing calls to Plaintiff. The legal issues and factual questions involved in both sets of claims are closely related, and it would be efficient and convenient for the Court to address them together in a single proceeding. Therefore, the Court's supplemental jurisdiction is appropriate to encompass the claims arising under Tex. Bus. & Com. Code § 302.

8. This Court has personal jurisdiction over Defendant as they conducted business within this district and purposefully availed themselves of the privilege of conducting activities within the State of Texas.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district.

## PARTIES

10. Plaintiff Mark Anthony Ortega is a natural person who resided in San Antonio, Bexar County, Texas at all times relevant hereto.

11. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

12. Defendant American-Amicable Insurance Company of Texas is a corporation that offers insurance services into this District, with its principal place of business in Waco, TX.

13. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

## FACTUAL BACKGROUND

14. On or about January 23, 2012, seeking to prevent unwanted telemarketing calls, Plaintiff registered his cellular telephone number, 210-744-XXXX ("Plaintiff's Number"), with the National Do Not Call Registry. Plaintiff has never de-listed this number.

15. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of Plaintiff's Number.

16. Plaintiff uses his cellular phone primarily for personal, residential, and household purposes.

17. Plaintiff's Number is designated for residential use, as it is assigned to a consumer telephone exchange service and is not assigned to a telephone exchange service designated for business use.

18. Plaintiff has never granted express consent to Defendant or any entity acting on its behalf to receive telemarketing calls.

19. On information and belief, Defendant employs a strategy of concealing its identity in telemarketing calls to generate leads and avoid accountability, targeting unsuspecting consumers who have never had any prior relationship with the company and who have never provided consent to receive such calls.

20. Beginning in April 2024 and continuing through the present, Defendant has relentlessly targeted Plaintiff with hundreds of unwanted telemarketing calls to Plaintiff's Number. These calls were made without Plaintiff's prior express consent and in blatant disregard of Plaintiff's registration on the National Do Not Call Registry.

21. All of the calls placed to Plaintiff's Number utilized an automatic telephone dialing system (ATDS) or a pre-recorded voice. This is evidenced by the use of a generic and unnatural monotone voice in numerous calls, the identical messages played repeatedly, the significant delays

4

and beeps before connecting to a representative, and the sheer volume and repetitive nature of Defendant's calls, as documented in the attached call log. *See* Exhibit A.

22. The vast majority of the calls came from illegally "spoofed" caller ID numbers to hide the fact that they were coming from Defendant. When the numbers are called back, they are either disconnected or ring to local residents unrelated to the Defendant.

23. Defendant knowingly uses illegally spoofed caller ID numbers and the illegal fictious name "Senior Benefits", "American Senior Benefits", and others to hide the fact that it is actually the Defendant calling to sell policies using what it knows are highly illegal prerecorded robocalls.

24. The pre-recorded message used in the calls typically began with a statement like, "Hi, this is [Name] from Senior Benefits." The message would then proceed to ask qualifying questions about the recipient's age and health, attempting to determine if they were eligible for certain insurance products offered by Defendant ALICO. If Plaintiff states they are under forty then the call would typically disconnect.

25. On numerous occasions, Plaintiff answered the calls and informed the Defendant that he was not interested in the offered products and requested to be placed on their internal do-not-call list. However, the calls continued unabated, demonstrating a willful and knowing disregard for Plaintiff's rights and the TCPA's requirements.

26. One call in particular was on or around July 2, 2024, at 10:42 AM CT, Plaintiff received a telemarketing call from the number 210-481-8315. Determined to uncover the identity of the party behind these persistent and intrusive calls, Plaintiff feigned interest in the offer being presented. During the call, the caller, identifying himself as "James" used a pre-recorded message and employed a generic, monotone voice strongly suggestive of an ATDS and pre-recorded message. When Plaintiff repeatedly questioned "James" about what company he represented,

"James" was unresponsive and stuck to the pre-recorded script, further indicating the automated nature of the call. After a significant delay and a distinct beep, Plaintiff was transferred to a product specialist. It was this product specialist, who identified himself as "Thomas Green," who offered Plaintiff a $35,000 final expense policy from Defendant ALICO for a monthly premium of $58.05.

27. A partial log of the unlawful telemarketing calls Plaintiff received from Defendant is set forth below as Exhibit A. The log reflects two distinct periods: (1) partial list of calls received from April 2024 to May 2024, representing a sample of the initial wave of Defendant's illegal telemarketing, and (2) calls received on September 9, 2024, illustrating the extreme and escalating frequency of calls Plaintiff now endures daily. While not exhaustive, this log reveals Defendant's persistent disregard for Plaintiff's rights and the law, with the volume of calls increasing to over fifteen calls per day despite Plaintiff's do-not-call requests.

28. Plaintiff has suffered numerous harms as a result of Defendant's unlawful telemarketing campaign in the form of invasion of privacy, frustration and annoyance, wasted time, anxiety, and depletion of his cellular phone's battery life.

## COUNT I
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5))

29. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 28.

30. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

31. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law.

32. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## COUNT II
### Violation of the Telephone Consumer Protection Act
### Failure to Honor Do-Not-Call Request
### (47 C.F.R. § 64.1200(d)(6))

33. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 28.

34. The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to honor consumer requests to cease such solicitations. *See* 47 C.F.R. § 64.1200(d)(6).

35. Specifically, 47 C.F.R. § 64.1200(d)(6) requires a "person or entity making calls for telemarketing purposes" to "maintain a record of a consumer's request not to receive further telemarketing calls" and honor said request "for 5 years from the time the request is made."

36. On or around May 7, 2024, Plaintiff expressly instructed Defendant, to stop contacting him and cease all telemarketing communications, effectively creating a do-not-call request pursuant to 47 C.F.R. § 64.1200(d)(6).

37. Notwithstanding Plaintiff's clear and unequivocal request that Defendant stop calling, Defendant chose to ignore Plaintiff's instructions and proceeded to send solicitations to Plaintiff's Number.

38. As a result of Defendant's failure to implement and maintain procedures reasonably calculated to honor Plaintiff's do-not-call request, and/or Defendant's intentional and knowing decision to disregard said request, Plaintiff is entitled to damages in an amount to be proven at trial.

## COUNT III
### Violation of the Texas Business and Commercial Code

7

**(Tex. Bus. & Com. Code § 302.101)**

39. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 28.

40. The actions of Defendant, as described herein, constitute "telephone solicitation" as defined under Tex. Bus. & Com. Code § 302.001(7), because they were unsolicited telephone calls to Plaintiff made for the purpose of inducing Plaintiff to purchase a final expense life insurance policy.

41. Upon information and belief, Defendant is not registered as a telemarketer in Texas, as required by Tex. Bus. & Com. Code § 302.101.

42. §302.302(a) of the Texas Business & Commercial Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

43. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

## COUNT IV
**Violation of the Telephone Consumer Protection Act**
**ATDS or Pre-Recorded Message**
**(47 C.F.R. § 64.1200(227(b)(1)(A)(iii))**

44. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 28.

45. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's Number without consent.

46. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff is entitled to damages in an amount to be proven at trial.

8

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.  Award Plaintiff all damages available under the TCPA, including statutory damages of $500.00 for each violation of 47 U.S.C. § 227(c), or $1,500.00 for each willful or knowing violation.

B.  Award Plaintiff all damages available under Tex. Bus. & Com. Code § 302, including statutory damages of $5,000 per violation as provided under Tex. Bus. & Com. Code § 302.302(a).

C.  Award Plaintiff all damages available under the TCPA, including statutory damages of $500.00 for each violation of 47 U.S.C. § 227(b), or $1,500.00 for each willful or knowing violation.

D.  Award Plaintiff actual damages suffered as provided under 47 U.S.C. §227(c)(5)(A)), 47 U.S.C. §227(b)(3)(B)), and Tex. Bus. & Com. Code § 302.302 at trial.

E.  Issue a permanent injunction prohibiting Defendant from further calls to Plaintiff in violation of the TCPA as provided under 47 U.S.C. § 227(b)(3) and (c)).

F.  All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to Tex. Bus. & Com. Code §302.302(a).

G.  Grant any other relief deemed just and equitable by the Court.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Mark Anthony Ortega**, demands a jury trial in this case.

Dated: September 9, 2024

Respectfully submitted,

Mark Anthony Ortega
Plaintiff, Pro Se

By: ______________________
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
Telephone: (210) 744-9663

## EXHIBIT A

| Date | Time | Phone Number |
|---|---|---|
| April 9, 2024 | 1:39 PM CT | 458-888-5811 |
| April 15, 2024 | 9:56AM CT | 210-532-4344 |
| April 15, 2024 | 12:48PM CT | 956-329-1604 |
| April 23, 2024 | 12:40PM CT | 409-792-9526 |
| April 24, 2024 | 12:56PM CT | 412-754-9166 |
| April 24, 2024 | 6:48PM CT | 508-514-2285 |
| April 25, 2024 | 2:32PM CT | 713-468-8400 |
| May 7, 2024 | 9:11AM CT | 720-703-1388 |
| May 7, 2024 | 11:07AM | 210-493-8707 |
| May 7, 2024 | 1:04PM CT | 469-769-3440 |
| May 7, 2024 | 5:11PM CT | 254-737-1496 |
| May 8, 2024 | 10:01AM | 210-349-4486 |
| May 8, 2024 | 2:18PM | 210-623-9729 |
| May 9, 2024 | 5:18PM CT | 775-571-1702 |
| May 13, 2024 | 2:22PM CT | 512-379-6120 |
| May 14, 2024 | 11:48AM CT | 210-670-2455 |
| May 14, 2024 | 2:33PM CT | 210-509-7831 |
| May 14, 2024 | 3:04PM CT | 210-255-1948 |
| May 14, 2024 | 5:12PM CT | 210-670-1885 |
| September 9, 2024 | 10:47AM CT | 210-828-3519 |
| September 9, 2024 | 11:04AM CT | 940-448-8162 |
| September 9, 2024 | 11:11AM CT | 210-979-6367 |
| September 9, 2024 | 11:53AM CT | 248-834-9842 |
|  |  |  |

| Date | Time | Phone Number |
|---|---|---|
| September 9, 2024 | 12:18PM CT | 612-787-2595 |
| September 9, 2024 | 12:41PM CT | 210-533-7267 |
| September 9, 2024 | 12:42PM CT | 210-626-0958 |
| September 9, 2024 | 12:50PM CT | 234-398-1549 |
| September 9, 2024 | 1:03PM CT | 210-532-4849 |
| September 9, 2024 | 1:06PM CT | 210-649-2901 |
| September 9, 2024 | 1:19PM CT | 210-342-0431 |
| September 9, 2024 | 1:23PM CT | 210-231-4301 |
| September 9, 2024 | 1:36PM CT | 210-523-0806 |
| September 9, 2024 | 1:40PM CT | 210-626-8444 |
| September 9, 2024 | 2:11PM CT | 612-293-9252 |
| September 9, 2024 | 2:25PM CT | 210-670-9295 |
| September 9, 2024 | 2:50PM CT | 210-525-2950 |
| September 9, 2024 | 2:54PM CT | 612-895-1499 |
| September 9, 2024 | 2:58PM CT | 956-274-0214 |
| September 9, 2024 | 3:03PM CT | 210-930-4497 |
| September 9, 2024 | 3:04PM CT | 570-886-3400 |
| September 9, 2024 | 3:39PM CT | 210-545-0114 |
| September 9, 2024 | 3:56PM CT | 210-622-9578 |
| September 9, 2024 | 4:08PM CT | 763-391-4536 |
| September 9, 2024 | 4:09PM CT | 612-441-3627 |
| September 9, 2024 | 4:43PM CT | 210-595-6906 |
| September 9, 2024 | 4:50PM CT | 325-238-2575 |
| September 9, 2024 | 4:57PM CT | 361-593-7871 |
| September 9, 2024 | 5:03PM CT | 612-778-5324 |